USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/21/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
GESSEL URENA,                                               :
                                        Plaintiff,          :
                                                            :   16 Civ. 1998 (LGS)
                -against-                                   :
                                                            :   **OPINION AND ORDER**
SWISS POST SOLUTIONS, INC. and                              :
AMERICAN SOCIETY FOR THE PREVENTION                         :
OF CRUELTY TO ANIMALS,                                      :
                                        Defendants.         :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Gessel Urena brings this action alleging that Defendants Swiss Post Solutions, Inc. ("SPS") and American Society for the Prevention of Cruelty to Animals ("ASPCA") violated the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") in their responses to her knee surgery and resultant limitations. Defendants separately move to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant ASPCA's motion is granted, and Defendant SPS's motion is denied.

**I.   BACKGROUND**

The facts below are based solely on the allegations in the Complaint and are accepted solely for purposes of this motion.

Defendant SPS is a company that provides outsourcing and digitization solutions to businesses worldwide, including Defendant ASPCA. In December 2013, Plaintiff began working for SPS as an intern. SPS assigned her to work at ASPCA. In May 2014, SPS offered Urena a permanent position as an office services assistant, working in ASPCA's offices. As an office services assistant, Urena was responsible for sorting and distributing mail; assisting with

troubleshooting technical problems with copiers; stocking, organizing and cleaning supply rooms and pantries; assisting with moving boxes and light inter-office moves; and preparing offices for new hires, among other similar duties.

In May 2014, Urena learned that she required knee surgery to repair an injury sustained the previous year. According to her doctor, Urena would need one week of bed rest following the surgery and Urena would have "limited mobility thereafter." After learning that she would need surgery, Urena requested short term disability coverage from Gary Lucas, the site supervisor for SPS at ASPCA. Lucas directed Urena to contact SPS's Human Resources department.

Approximately one month prior to her surgery, Urena spoke to SPS's Human Resources department about her request for short term disability. SPS granted Urena's request on August 13, 2014, the day following her surgery.

On September 29, 2014, Urena's doctor cleared her to return to work with minor limitations. Urena was to avoid standing or sitting for more than one hour, and to avoid lifting objects weighing more than 15 pounds. Her doctor provided her with a note explaining these restrictions. On or about September 30, 2014, Urena notified Lucas of her limitations and told him that she would be ready to return to work on October 12, 2014. Lucas informed Urena that he would notify SPS's Human Resources department, and advised Urena to contact them as well. Urena left a voicemail with Mayra Marmolejo, an employee in SPS's Human Resources department. On October 6, 2014, Urena was terminated by Marmolejo, who stated that Urena's inability to return to work was the reason for her termination. Marmolejo did not inquire into Urena's limitations or discuss the possibility of a reasonable accommodation with Urena.

## II. STANDARD

On a motion to dismiss for failure to state a claim, "the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient facts to survive." *Doe v. Columbia Univ.*, No. 15-1536, 2016 WL 4056034, at *1 (2d Cir. July 29, 2016); *see also Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).  To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*(citation omitted).

## III. DISCUSSION

The Complaint alleges employment discrimination based on (1) Defendants' alleged failure to accommodate Plaintiff's disability in violation of the ADA and NYSHRL, and (2) Defendants' subsequent decision to fire her in violation of the NYSHRL and NYCHRL.

### A. Elements of Disability Discrimination Claims Under the ADA, NYSHRL, and NYCHRL

#### i. The ADA

Title I of the ADA prohibits disability discrimination by "covered entities," such as employers and employment agencies.  42 U.S.C. §§ 12111(2); 12112(a).  Discrimination under the ADA includes failure to make "reasonable accommodations to the known physical . . . limitations of an otherwise qualified [employee with a disability], unless [the] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business . . . ."  *Id.* § 12112(b)(5)(A).

To establish a prima facie case of discrimination for failure to provide a reasonable

3

accommodation under the ADA, a plaintiff must demonstrate that "(1) [she has] a disability under the meaning of the ADA; (2) a [covered entity] had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the [covered entity] has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013).

### ii. The NYSHRL and NYCHRL

Section 296 of the NYSHRL prohibits an employer from discriminating against an individual on the basis of disability. N.Y. Exec. Law § 296(1)(a). Employers may not fire a disabled individual on the basis of her disability, nor may they discriminate against her "in compensation or in terms, conditions or privilege of employment." *Id.* In addition, employers may not "refuse to provide reasonable accommodations to the known disabilities . . . of an employee." *Id.* § 296(3)(a).

Section 8-107 of the NYCHRL prohibits an employer from discharging or discriminating against an employee "in terms, conditions, or privileges of employment" on the basis of that employee's "actual or perceived . . . disability." N.Y.C. Admin. Code § 8-107(1)(a). An employer must "'make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job . . . provided that the disability is known or should have been known by the [employer].'" *Romanello v. Intessa Sanpaolo, S.p.A.*, 998 N.E.2d 1050, 1053 (N.Y. 2013) (alteration in original) (quoting N.Y.C. Admin. Code § 8-107(15)(a)).

To state a general prima facie case of disability discrimination based on wrongful termination under the NYSHRL and NYCHRL, a plaintiff must allege that "(1) [she] was a member of a protected class; (2) [she] was competent to perform the job in question, or was performing the job duties satisfactorily; (3) [she] suffered an adverse employment action [i.e.,

was terminated]; and (4) the action occurred under circumstances that give rise to an inference of discrimination." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). To state a prima facie case of disability discrimination for failure to reasonably accommodate under the NYSHRL and NYCHRL, the complaint must allege that (1) the employee has a disability under the relevant statute, (2) an employer covered by the statute had notice of her disability, (3) with reasonable accommodations, she could perform the essential functions of her job, and (4) her employer refused to make such accommodations. *See Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (applying ADA reasonable accommodation standard to the NYSHRL); *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010) (concluding that claims under the NYSHRL and NYCHRL require proof of the same elements as an ADA claim).

### B.  Defendant ASPCA's Motion to Dismiss

Defendant ASPCA moves to dismiss on two grounds -- first, that ASPCA was not Plaintiff's employer and second, that the Complaint insufficiently alleges that ASPCA failed to reasonably accommodate Plaintiff's alleged disability or took any adverse employment action against her. ASPCA succeeds on both grounds.

#### i.  ASPCA As an Employer

ASPCA's liability in the Complaint is premised on its status as Plaintiff's employer. The ADA defines an "employer" in relation to its employees. *See* 42 U.S.C. § 12111(4), (5). In determining whether an individual is an "employee" within the meaning of the ADA, courts look to the common law of agency. *See Clackamas Gastroenterology Assoc., P.C. v. Wells*, 538 U.S. 440, 444-48 (2003) (finding ADA definition of "employee" circular and turning to common law of agency to resolve dispute); *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 371 (2d Cir. 2006) ("[W]hen Congress has used the term 'employee' without defining it, . . . Congress intended to describe the conventional master-servant relationship as understood by common-law agency

doctrine." (citation omitted) (alteration in original)).

In determining what constitutes an employer-employee relationship under the common law of agency, courts look to thirteen factors set forth by the Supreme Court in *Community for Creative Non-Violence v. Reid*: (1) the hiring party's right to control the "manner and means by which the product is accomplished," (2) "the skill required," (3) the source of instrumentalities and tools required for the job, (4) the location of the work, (5) the duration of the relationship between the parties, (6) "whether the hiring party has the right to assign additional projects to the hired party," (7) the "extent of the hired party's discretion over when and how long to work," (8) "the method of payment," (9) "the hired party's role in hiring and paying assistants," (10) "whether the work is part of the regular business of the hiring party," (11) "whether the hiring party is in business," (12) the "provision of employee benefits," and (13) the "tax treatment of the hired party."  490 U.S. 730, 751-52 (1989); *accord Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 228-31 (2d Cir. 2008) (applying *Reid* factors to examine employer-employee relationship between plaintiff and defendant under Title VII and the NYSHRL).  Of these factors, the "common-law element of control is the principal guidepost that should be followed." *See Gulino*, 460 F.3d at 371 (quoting *Clackamas*, 538 U.S. at 448).

The NYSHRL and NYCHRL similarly define an "employer" in relation to its employees. *See* N.Y. Exec. Law § 292(5) ("The term 'employer' does not include any employer with fewer than four persons in his or her employ . . . ."); N.Y.C. Admin. Code § 8-102(5) (same).  In determining whether an entity is an employer under the NYSHRL and NYCHRL, courts generally look to four elements:  "(1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct."  *Griffin v. Sirva Inc.*, No. 15-1307, 2016 WL 4524466, at *7 (2d Cir. Aug.

30, 2016) (quoting *State Div. of Human Rights v. GTE Corp.*, 487 N.Y.S.2d 234, 235 (4th Dep't 1985); *see also Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 470-71 (S.D.N.Y. 1996) (applying same test for employer-employee relationship to claims under the NYSHRL and NYCHRL).

Under these definitions and standards, the Complaint fails to state a claim against ASPCA because it fails to plead any facts that would plausibly lead to the conclusion that ASPCA was Plaintiff's employer.  The Complaint contains only two allegations about ASPCA regarding Plaintiff's employment, and these are insufficient:  SPS first assigned Plaintiff to work at ASPCA as an intern, and SPS later offered her a permanent position "as an office services assistant for SPS working in the offices of ASPCA."  In substance, the Complaint alleges that ASPCA was a location where Plaintiff worked.  According to the Complaint, SPS hired Urena.  SPS placed her at ASPCA.  Urena reported to an SPS supervisor while at ASPCA.  When Urena required a short term disability leave, she contacted SPS.  SPS was responsible for deciding whether to grant Urena her requested leave.  When Urena wanted to return to work, she contacted SPS.  When Urena required reasonable accommodations, she contacted SPS.  Ultimately, the Complaint alleges that SPS fired Plaintiff.  The Complaint includes no similar allegations about ASPCA.

Plaintiff argues that ASPCA "may" be Plaintiff's "joint employer" with SPS.  A joint employer may be held liable for employment discrimination by a person whom it does not technically employ if the alleged joint employer "handle[s] certain aspects of the employer-employee relationship jointly" with the employer of record.  *See* Griffin, 2016 WL 4524466 at *8 (internal quotations and citation omitted).  To determine whether an entity can be considered a joint employer, courts evaluate "whether the alleged [joint] employer '(1) had the power to hire

and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *See Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012) (citation omitted); *see also Serv. Employees Int'l Union, Local 32BJ v. Nat'l Labor Relations Bd.*, 647 F.3d 435, 442 (2d Cir. 2011) ("'[A]n essential element'" of any joint employer determination is 'sufficient evidence of immediate control over the employees' . . . ." (citation omitted)); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 69 (2d Cir. 2003) (noting that four-factor test for joint employer status "may approximate the common-law test for identifying joint employers").

None of the allegations in the Complaint would plausibly lead to the conclusion that ASPCA was Plaintiff's employer under the joint employer doctrine. As noted above, the Complaint contains only two allegations about ASPCA regarding Plaintiff's employment, and these allegations -- that Plaintiff was assigned to work at ASPCA first as an SPS intern, and later as an SPS employee -- do not show the control necessary to conclude that ASPCA was a joint employer with SPS.

Drawing all reasonable inferences in Plaintiff's favor, the Complaint fails to allege that ASPCA was Plaintiff's employer sufficient to give rise to liability for employment discrimination.

### ii.  Sufficiency of the Complaint With Respect to ASPCA Claims

Even if ASPCA were Plaintiff's employer under the relevant statutes, the Complaint fails to allege that ASPCA took any actions that violated the ADA, NYSHRL or NYCHRL. The Complaint specifically alleges that Urena notified SPS both that she had minor limitations following her knee surgery and that she was ready to return to work. The Complaint further alleges that SPS terminated Urena without discussing reasonable accommodations that would

enable her to continue working for SPS.

By contrast, the Complaint never alleges that Urena asked ASPCA for accommodations, or that ASPCA took any actions at all with regard to Urena's knee surgery and resultant limitations, much less discriminatory or adverse employment actions. The Complaint thus fails to allege sufficient facts to make out the prima facie case of disability discrimination against ASPCA.

### C. Defendant SPS's Motion to Dismiss

Defendant SPS moves to dismiss Plaintiff's case against SPS on two grounds. First, SPS argues that Plaintiff failed to plead a qualifying disability under the ADA. Second, SPS argues that Plaintiff's claims under the ADA, NYSHRL and NYCHRL for failure to accommodate are deficient because Plaintiff's request for short term leave was granted and she made no further accommodation requests. For the reasons discussed below, SPS's motion is denied on both grounds.

#### i. Knee Injury as a Qualifying Disability Under the ADA

The Complaint sufficiently pleads a qualifying disability under the ADA. Under the ADA, an individual is disabled if she has a "physical . . . impairment that substantially limits one or more major life activities . . . or [if she is] regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities "include, but are not limited to, . . . performing manual tasks . . . standing, lifting . . . and working." *Id.* § 12102(2)(A). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of [the ADA]." 29 C.F.R. § 1630.2(j)(1)(ii). "The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i).

While SPS cites a number of cases finding that knee injuries are not qualifying disabilities under the ADA, those cases did so because they found the injury in question to be a temporary impairment.  *See, e.g., Holmes v. N.Y.C. Dep't of City Wide Admin. Servs.*, No. 14 Civ. 8289, 2015 WL 1958941, at *4 (S.D.N.Y. Apr. 30, 2015) (dismissing ADA claim where documents before the court on a motion to dismiss indicated that disability as a result of knee injury was expected to last only several months); *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 296 (S.D.N.Y. 2014) (granting summary judgment where the evidence showed that Plaintiff's knee injury was temporary and lasted fourteen weeks).  The cases do not address the ADA Amendments Act of 2008 and resulting regulations, which state that the "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting."  29 C.F.R. § 1630.2(j)(1)(ix); *see also* ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2, 122 Stat. 3553.

Here, the Complaint alleges that Plaintiff's surgery was invasive and that "she would have limited mobility thereafter."  She was instructed that upon returning to work, she could not stand or sit for prolonged periods, or lift heavy objects.  Nothing in the Complaint suggests that Plaintiff's impairment was not substantially limiting.  Drawing all inferences in Plaintiff's favor, the Complaint sufficiently pleads a "physical . . . impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1); *see* § 12102(2)(A) (standing and lifting are major life activities); *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 (2d Cir. 2014) (citing *Picinich v. United Parcel Serv.,* 321 F. Supp. 2d 485, 502 (N.D.N.Y. 2004) (inability to sit, stand or walk for more than 30 minutes could be substantially limiting impairment)).  The Complaint pleads a qualifying disability under the ADA.

The Complaint also alleges that SPS fired Plaintiff without discussing any reasonable

10

accommodation because of its belief that she could not return to work.  The Complaint therefore pleads sufficient facts to indicate that SPS did not accommodate her because of its perceptions about her disability, which also would give rise to a claim under the ADA.  *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 234-35 (2d Cir. 2015) (ADA prohibits discrimination where plaintiff was disabled within meaning of ADA or "perceived to be so by her employer" and where plaintiff was capable of doing job with or without reasonable accommodation).

        ii.       **Plaintiff's Allegations of Failure to Reasonably Accommodate her Disability**

The Complaint sufficiently pleads facts to support Plaintiff's claim that SPS failed to reasonably accommodate her disability.  The Complaint alleges that Urena informed her SPS supervisor that she could not sit or stand for more than an hour at a time and that she would need to avoid lifting objects of more than fifteen pounds.  The Complaint also alleges that Urena intended to discuss these accommodation requests with the SPS Human Resources department as her SPS supervisor had directed, that she left Human Resources a voicemail and that she was fired when she heard back from them without any discussion of a reasonable accommodation for her limitations.  These allegations sufficiently allege that Plaintiff did request additional accommodations from SPS on the basis of her disability, which SPS declined to consider in violation of the ADA and NYSHRL.

**IV.**    **CONCLUSION**

For the foregoing reasons, Defendant ASPCA's motion to dismiss is GRANTED, and Defendant SPS's motion to dismiss is DENIED.  The Clerk of Court is respectfully directed to close the motions at Docket No. 20 and Docket No. 29.

Dated:  September 21, 2016
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE